# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| ASSAF MHANNA and<br>TAMMY MHANNA, | Civil No. 10-292 (JRT/LIB) |
| Plaintiffs, | |
| v. | |
| U.S. DEPARTMENT OF HOMELAND<br>SECURITY CITIZENSHIP AND<br>IMMIGRATION SERVICES;<br>SHARON DOOLEY; UNKNOWN AND<br>UNNAMED U.S. DEPARTMENT OF<br>HOMELAND SECURITY CITIZENSHIP<br>AND IMMIGRATION SERVICES<br>OFFICIAL identified only as "RAH;"<br>ALEJANDRO MAYORKAS;<br>JANET NAPOLITANO; ERIC J. HOLDER;<br>U.S. DEPARTMENT OF HOMELAND<br>SECURITY, U.S. IMMIGRATION AND<br>CUSTOMS ENFORCEMENT, and<br>SCOTT BANIECKE, | **MEMORANDUM OPINION<br>AND ORDER** |
| Defendants. | |

Rachel M. Engebretson and Phillip F. Fishman, **FISHMAN, BINSFELD & BACHMEIER, P.A.**, 8011 34th Avenue South, Suite 245, Bloomington, MN 55425, for plaintiffs.

Friedrich A. P. Siekert, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415; and Craig W. Kuhn and Elizabeth J. Stevens, **UNITED STATES DEPARTMENT OF JUSTICE**, P.O. Box 868, Ben Franklin Station, Washington, D.C. 20044, for defendants.

This case concerns an ongoing struggle between Assaf Mhanna, a citizen and native of Lebanon, and United States immigration authorities over Mr. Mhanna's status

in the United States. He brings this lawsuit with his spouse, Tammy Mhanna, who is a United States citizen. Because this Court does not have jurisdiction to hear the Mhannas' multiple claims, the Court will grant the defendants' motion to dismiss the case.

On February 1, 2010, plaintiffs/petitioners Assaf Mhanna and Tammy Mhanna (collectively, "plaintiffs") brought this action against the defendants/respondents United States Department of Homeland Security, Citizenship and Immigration Services ("USCIS"); Sharon Dooley, the Field Office Director of the St. Paul Field office of the USCIS; an unknown USCIS official identified as "RAH;" Alejandro Mayorkas, Director of USCIS; Janet Napolitano, Secretary of the Department of Homeland Security; Eric J. Holder, United States Attorney General; the U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement ("ICE"); and Scott Baniecke, Field Office Director of the ICE St. Paul Field Office (collectively, "defendants"). (Compl., Docket No. 1.) The case is now before the Court on defendants' response to United States Magistrate Judge Raymond L. Erickson's Order to Show Cause and defendants' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim.

## BACKGROUND

Assaf Mhanna ("Mhanna") is a citizen and native of Lebanon. (Compl. ¶ 5, Docket No. 1.) Tammy Mhanna is his spouse and a U.S. Citizen. (*Id.* ¶ 13.)

### A.     Mhanna's Entry on December 8, 1998

Mhanna was first paroled into the United States on or about December 8, 1998, at the Point of Entry in Nogales, Arizona. (*Id.* ¶ 16.) Upon Mhanna's inspection at entry,

an officer of the Immigration and Naturalization Service[1] ("INS") completed a Form I-213, Record of Deportable/Inadmissible Alien.  (Mot. to Reopen & Reconsider Ex. 2, Engebretson Aff. Ex. E, Docket No. 4.)  It includes the following narrative:

> Subject arrived this date afoot from Mexico seeking admission as[] a citizen of the United States.  Subject stated to the primary officer, [Immigration Inspector] Stephen Hathaway, he was an American.  Hathaway asked the subject a few more questions whereupon the subject admitted his true nationality.  He was escorted to INS secondary.

> In secondary inspection a sworn statement was taken by [Special Operations Immigration Inspector] J. Dayhoff.  In the statement the subject admitted his nationality.  He further stated he travelled [sic] from Beirut to Amsterdam to Mexico City to Hermosillo.  He stated he has friends in Hermosillo which [sic] are also from Lebanon.  The subject then stated he came from Lebanon to the United States because he is Christian and can not live in Lebanon because it is a Muslim country.

> The subject was advised he would be held in INS custody pending a decision on his claim of fear to return to his country.  He was given and acknowledged receipt of form M-444.  He appears inadmissible per [§] 212(a)(6)(C)(ii) [of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(C)(ii)[2]] and transferred to the Florence detention facility to await his hearing.

---

[1] "On March 1, 2003, the Department of Homeland Security absorbed the former Immigration and Naturalization Service.  USCIS, a division of DHS, is responsible for the adjudication of immigrant visa petitions."  *Abdelwahab v. Frazier*, 578 F.3d 817, 819 n.2 (8th Cir. 2009) (citation omitted).

[2] INA § 212(a)(6)(C)(ii), 8 U.S.C. § 1182(a)(6)(C)(ii), states in relevant part:

(a)     Classes of aliens ineligible for visas or admission

Except as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States:

. . . .

(6)     Illegal entrants and immigration violators

. . . .

(C)     Misrepresentation

. . . .

(Footnote continued on next page.)

(*Id.*)  Dayhoff's Form I-867A, Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act, records Mhanna's sworn statement on December 8, 1998.  (*Id.*)  In relevant part, it states:

> Q:  Is there any way possible you could be a citizen of the United States?
>
> A:  No.
>
> . . . .
>
> Q:  What documents did you show the first inspector you saw in order to enter the United States?
>
> A:  No.  I told him I was an American citizen.

Mhanna reviewed and signed the record, indicating that it is "a full, true and correct record of [his] interrogation."  (*Id.*)

On December 23, 1998, Mhanna had a credible-fear interview during which he was represented by counsel and assisted by an Arabic language interpreter.  (*Id.*)  The purpose of the interview was "to determine whether [Mhanna] ha[s] a fear of persecution or harm in [his] home country."  (*Id.*)  The Asylum Pre-Screening Officer who conducted the credible fear interview found that Mhanna's testimony was credible and that Mhanna had a credible basis for fear of persecution in his home country on account of religion and political opinion.  (*Id.*)  The officer found that Mhanna has "a significant possibility that

_____

(Footnote continued.)

> (ii)  Falsely claiming citizenship
>
> (I)  In general
>
> Any alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit under this chapter . . . or any other Federal or State law is inadmissible.
>
> . . . .

he . . . could establish eligibility for asylum." (*Id.*)  The officer's notes indicate that Mhanna offered the following information about his inspection on December 8, 1998:

> Q:  At any time did [you] use a different name or pretend to be someone else[?]
>
> A:  No, this is the [first] time I came to the States, [and I] told them at the border I was a U.S. Citizen[.]
>
> Q:  Why[?]
>
> A:  I don't know but I thought I could say this.

(*Id.*)

**B.  Mhanna's Asylum Proceedings and Immediate Relative Immigrant Visa Petition**

The INS subsequently released Mhanna from detention and paroled him into the United States, and on December 15, 1999, Mhanna filed an application for asylum, withholding of removal, and relief under the Convention Against Torture.  (Resp. to Dec. 2, 2009 Req. for Initial Evidence at 1, Mot. to Reopen & Reconsider Ex. 2, Engebretson Aff. Ex. E, Docket No. 4; *In re Mouhanna*,[3] No. A77393085, Slip Op. at 2, Mot. to Reopen & Reconsider Ex. 4, Engebretson Aff. Ex. E, Docket No. 4.)  His asylum application was referred to the Immigration Court.  (*In re Mouhanna*, Slip Op. at 2.)  On March 14, 2001, Mhanna was served with a Notice to Appear in Removal Proceedings. (Compl. ¶ 17, Docket No. 1.)

In January 2002, an Immigration Judge ("IJ") held a hearing on Mhanna's application.  (Jan. 31, 2002 Tr., Mot. to Reopen & Reconsider Ex. 3, Engebretson Aff.

---

[3] The captions in many of the immigration proceedings and in the proceedings before the U.S. Court of Appeals for the Ninth Circuit use this alternative spelling of Mhanna's surname.

Ex. E, Docket No. 4.)    Mhanna's attorney questioned him about the events of

December 8, 1998:

> Q:    Okay.  Now, let's turn to your coming to the United States.  When you came to the border at Nogales, did you go to border crossing with INS inspectors?
>
> A:    I entered from a big door that you get to the United States.
>
> Q:    Okay.  And did you come up to the border on foot?
>
> A:    Yes, walking.
>
> Q:    All right.  And when you came into the INS checkpoint there, were there other people in line with you?
>
> A:    There was a line in front of me and I stood in the line.
>
> Q:    All right.  And when you first spoke to the INS inspector, what language did he speak to you?
>
> A:    There was a policeman standing, he spoke to me in English.
>
> Q:    Okay.  And did he ask you for your documents?
>
> A:    He asked me for I.D. and I told him I didn't have any.
>
> Q:    Okay.  Did you tell him you are a citizen of the United States?
>
> A:    He was asking a lot of people in front of me, so I told him yes.
>
> Q:    Okay.  Did you later tell the officer that you were not from the United States?
>
> A:    Right away I told him.
>
> Q:    Did you tell the officer where you were from?
>
> A:    Yes, I told him where I'm from.
>
> Q:    Where did you say?
>
> A:    I told him I am from Lebanon and I came from Lebanon.
>
> . . . .
>
> Q:    At the time he asked you if you were a citizen, did you know the meaning of that word in English?
>
> A:    No.
>
> Q:    Did you have any intent to falsely claim U.S. citizenship?
>
> A:    No, because I told him right away afterwards when I understood the question that I wasn't, I was Lebanese.

(*Id.* at 15-18.)  On cross-examination, Mhanna testified as follows:

Q:     And now, you were standing in a line to enter the United States, and did you have a document that authorized you to come in the United States?

A:     No.

Q:     Okay.  So, you told the inspector that you were a United States citizen?

A:     He asked me and at that I didn't know what, what, what he meant, what the question meant, so I told him, I thought that's what he want, what I'm supposed to say.

Q:     You thought you were supposed to say you were a United States citizen?

A:     I didn't understand the question.

Q:     Now, sir, when you first saw the first immigration inspector when you were trying to come into the United States, what did he say to you?

       . . . .

A:     He asked me for I.D.

Q:     Okay.  What did you show him?

A:     I told him I don't have I.D.

Q:     What did he ask you next?

A:     He asked me if I, if I'm American, I didn't understand the question, and that is the reason I answered, I answered yes.

Q:     Okay.  Well, why did you – did you use the words American?

A:     No, I answered yes, because I didn't understand.

Q:     You didn't understand what you were being asked?

A:     No, I didn't understand what I was being asked.

Q:     And how is it that after being asked several times, you figured out that you should say you were Lebanese?

A:     When he took me aside, it was about two minutes later, and he asked me where I came from, and I understood that I was supposed to tell him I came from Lebanon, and that's what I told him.

Q:     Okay.

A:     I didn't understand, I didn't understand the word citizenship at that time.

(*Id.* at 30-31.)

On February 1, 2002, Immigration Judge ("IJ") Anna Ho issued a written order denying Mhanna's application for asylum, withholding of removal, and relief under the Convention Against Torture. (*In re Mouhanna*, Slip Op. at 29.) The IJ also sustained the government's charge under INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i)[4], (*see id.* at 1 (noting a "charge" under § 212(a)(6)(C)(i) that Mhanna was "ineligible for admission for seeking entry by fraud or willful misrepresentation by falsely representing himself to be a United States citizen"), and ordered that Mhanna be removed to Lebanon. The IJ made the following adverse credibility determination relating to Mhanna's testimony about the events of December 8, 1998:

> During the entire time of the applicant's testimony, he twisted a pen on the table in front of him, acting as though he was very nervous. Particularly when he was questioned as to whether he told the immigration inspector that he was a United States citizen, he moved around in his chair and kept playing with the pen before him. This is the mannerism of

---

[4] INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), states in relevant part:

(a)    Classes of aliens ineligible for visas or admission

Except as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States:

. . . .

(6)    Illegal entrants and immigration violators

. . . .

(C)    Misrepresentation

(i)    In general

Any alien who by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible.

someone who appears to the court to be trying to explain away his first statement to the immigration inspector that he was a United States citizen.

The applicant denied that he claimed he was a United States citizen when he got to the border. The applicant also claimed that he did not speak English. However, when the Service went into all of the questions and answers, he affirmed all of the facts. The applicant is not credible as to his testimony that he did not claim U.S. citizenship. According to the "Q&A," Exhibit 4, page 3, he stated as follows:

"Q. What documents did you show the first inspector you saw in order to enter the United States? A. No. I told him I was an American citizen." If the applicant did not understand the question, or the word, "citizen," as he testified in court, he would not have been able to say, ". . . I was an American citizen."

Therefore, . . . the Court finds that the Service met its burden of proof in proving that the applicant falsely represented himself to be a U.S. citizen. Furthermore, the charge of fraud and material misrepresentation is sustained.

(*In re Mouhanna*, Slip Op. at 23-24.) The IJ also found that Mhanna's testimony regarding his fear of persecution was not credible, and found that his fear of returning to Lebanon was not objectively reasonable. (*Id.* at 24-25.) Therefore, the IJ found that Mhanna had "failed to meet his burden that he has a well-founded fear of persecution . . . , failed to establish that it is more likely than not that his life or freedom would be threatened in Lebanon and that he has been subjected to "torture" as defined under [the Convention Against Torture]." (*Id.* at 28-29.)

Mhanna filed an appeal with the Board of Immigration Appeals ("BIA"). (*See* Mot. to Reopen & Reconsider Ex. 5, Engebretson Aff. Ex. E, Docket No. 4.) The BIA exercised its power to conduct a *de novo* review of the record, and dismissed his appeal, finding "that Mouhanna did not sustain his burden of demonstrating that he has a well-founded fear of future persecution in Lebanon[.]" *See Mouhanna v. Ashcroft*, 118 Fed. Appx. 232, 233 (9th Cir. 2004). The BIA did not make any findings about Mhanna's

credibility.  *Id.*  On October 22, 2003, Mhanna was ordered removed.  (Order of Supervision, Engebretson Aff. Ex. F, Docket No. 4.)

Mhanna petitioned the United States Court of Appeals for the Ninth Circuit[5] for review of the BIA's final order dismissing his appeal from the IJ's denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture.  *Mouhanna*, 118 Fed. Appx. at 232.  On October 5, 2004, while that petition was pending, Mhanna married Tammy Mhanna.  (Resp'ts' Resp. to Pet'rs' Emergency Mot. for TRO & Prelim. Injunctive Relief from Immediate Deportation at 4, Docket No. 7.)

In a memorandum disposition dated December 13, 2004, the Ninth Circuit denied the petition, finding that, even assuming Mhanna's testimony was credible, "[s]ubstantial evidence supports the BIA's finding that Mouhanna" was not eligible for asylum or other relief.  *Mouhanna*, 118 Fed. Appx. at 233.  The court noted that "Mouhanna was never personally confronted, threatened, or harmed as a result of his affiliation with the Difaa Shaabi," a civilian political branch of the Lebanese Forces.  *Id.*

On January 28, 2005, Tammy Mhanna filed an Immediate Relative Immigrant Visa Petition pursuant to INA § 201(b), 8 U.S.C. § 1151(b), naming Assaf Mhanna as the beneficiary.  (*See* Engebretson Aff. Ex. B at 2, Docket No. 4; *id.* Ex. D.)

On March 4, 2005, Mhanna filed a motion with the BIA to reopen removal proceedings.  (Resp'ts' Resp. to Pet'rs' Emergency Mot. for TRO & Prelim. Injunctive

---

[5] Mhanna petitioned the Ninth Circuit for review because his asylum proceedings were held in an immigration court in Seattle, Washington.

Relief from Immediate Deportation at 4, Docket No. 7.)  *See Mouhanna v. Gonzales*, 234

Fed. Appx. 462 (9th Cir. 2007).

On April 1, 2005, while the motion to reopen was pending, USCIS approved

Tammy Mhanna's Immediate Relative Immigrant Visa Petition, filed pursuant to INA

§ 201(b), 8 U.S.C. § 1151(b).  (Compl. ¶ 5, Docket No. 1.)  The notice of approval stated

that the visa petition had been approved, but cautioned that

> the approval gives no assurance that the beneficiary will automatically be
> found eligible for visa issuance, admission to the United States or
> adjustment to lawful permanent resident status.  Whether the beneficiary
> gets a visa is decided only when an application is made to a consular
> officer; whether the beneficiary is admitted or adjusts status in the United
> States is decided only when an application is made to an immigration
> officer.

(Engebretson Aff. Ex. D, Docket No. 4.)

On July 27, 2005, the BIA denied the "motion to reopen as untimely because it

was not filed until more than one year after the BIA issued its final order of removal."

*Mouhanna*, 234 Fed. Appx. at 462.  Mhanna then filed with the Ninth Circuit a petition

for review of the BIA order denying his motion to reopen.  *See id.*  In a memorandum

disposition dated June 4, 2007, the Ninth Circuit denied the petition for review, holding

that the BIA did not abuse its discretion in denying the motion.  *Id.*  The court concluded

that Mhanna "failed to timely file his motion to reopen," and that he "did not show he

was entitled to equitable tolling."  *Id.*  The court also noted that he "failed to present new

and material evidence of changed conditions in Lebanon."  *Id.*

On May 14, 2008, ICE issued Mhanna an Order of Supervision, directing that he

participate in ICE's Intensive Supervision Appearance Program.  (Engebretson Aff.

Ex. F, Docket No. 4.)  The order imposed various conditions on Mhanna and obligated him to report to ICE on a regular basis.  (*Id.*)

On June 11, 2008, Mhanna filed a second motion with the BIA to reopen removal proceedings.  *Mouhanna v. Holder*, 318 Fed. Appx. 509 (9th Cir. 2009).  On October 27, 2008, the BIA issued an order denying the motion to reopen, finding that Mhanna failed to meet his burden of establishing a prima facie asylum claim to support reopening, and finding that the motion was "untimely and numerically barred."  *See id.* at 509.  Mhanna filed with the Ninth Circuit a petition for review of the BIA order denying the second motion, and in a memorandum disposition dated March 9, 2009, the Ninth Circuit denied the petition for review.  *Id.*  The Ninth Circuit held that the BIA did not abuse its discretion and noted that Mhanna's "motion to reopen to apply for asylum failed to present evidence of changed country conditions in Lebanon that is material to petitioner and his circumstances."  *Id.*  The Ninth Circuit added that "[t]he temporary stay of removal shall continue in effect until the issuance of the mandate."  *Id.*  Mhanna then filed a motion to stay the mandate, which the court denied on May 1, 2009.  (*Mouhanna v. Holder*, No. 08-74692, Docket Nos. 10, 12 (9th Cir. Apr. 24, 2009, May 1, 2009).)  The mandate issued on May 12, 2009.  (*Mouhanna v. Holder*, No. 08-74692, Docket No. 15 (9th Cir. May 12, 2009).)

On June 24, 2009, Mhanna filed another petition for review with the Ninth Circuit. In an order dated December 9, 2009, the court denied Mhanna's motion for a stay of removal pending review, citing *Nken v. Holder*, 129 S. Ct. 1749 (2009).  *Mouhanna v. Holder*, No. 09-71937 (9th Cir. Dec. 9, 2009).  The court also denied the government's

motion for summary disposition, finding that "the questions raised by this petition for review are sufficiently substantial to warrant further consideration by a merits panel." *Id.* The court also set a briefing schedule for the case. *Id.*

On December 18, 2009, Mhanna filed an "urgent motion for a stay of removal" with the Ninth Circuit. *Mouhanna v. Holder*, No. 09-71937 (9th Cir. Dec. 21, 2009). The court construed the motion as a motion for reconsideration of the December 9, 2009 order, and in an order dated December 21, 2009, denied the motion for reconsideration. *Id.* The order stated that "[n]o motions for reconsideration, modification, or clarification of this order shall be filed or entertained." *Id.*

On December 22, 2009, Mhanna filed an application for stay of deportation or removal with ICE. (Engebretson Aff. Ex. G, Docket No. 4.) On December 29, 2009, ICE denied the application. (*Id.*)

### C.    Mhanna's Adjustment of Status Proceedings

On October 28, 2009, the BIA issued *Matter of Yauri*, 25 I & N. Dec. 103 (BIA 2009). In that decision, the BIA "emphasize[d] that the existence of a final order of removal does **not** preclude the USCIS from granting adjustment of status to an arriving alien who is otherwise eligible for adjustment of status." *Id.* at 107. The BIA also clarified that "it is not necessary to reopen or terminate proceedings in order to allow an alien to pursue an application for adjustment of status before the USCIS." *Id.* at 112.

In response to *Yauri*, on November 13, 2009, Mhanna filed a Form I-485, applying to adjust his status to that of lawful permanent resident under INA § 245, based on his

approved immediate relative petition.  At that time he also filed a Form I-601 for a waiver of grounds of inadmissibility.  (*See* Compl. ¶ 18, Docket No. 1.)

On December 8, 2009, USCIS filed a Request for Initial Evidence in support of Mhanna's application for adjustment of status.  (*See* Mot. to Reopen & Reconsider Ex. 2, Engebretson Aff. Ex. E, Docket No. 4.)  The request stated that USCIS was "unable to complete the processing" of Mhanna's application for adjustment of status without certain initial information.  USCIS requested that Mhanna submit evidence of his lawful admission or parole into the United States, and a Form I-693 Report of Medical Examination and Vaccination Record.

When Mhanna reported to ICE's office in Bloomington, Minnesota, on the morning of December 29, 2009, pursuant to the conditions of the May 14, 2008 order of supervision, he received a Notice of Revocation of Release, informing him that he "will be kept in the custody of U.S. Immigration and Customs Enforcement (ICE) at this time." (Engebretson Aff. Ex. G, Docket No. 4.)  The notice stated, in relevant part:

> Your requests for a stay of removal have been denied by the 9th Circuit on December 9, 2009 and December 21, 2009.  Additionally, the stay of removal filed with ICE Detention and Removal was denied December 29, 2009.  Travel arrangements have been made and your removal is imminent.
>
> Based on the above, and pursuant to 8 C.F.R. § 241.4, you are to remain in ICE custody at this time.  You will promptly be afforded an informal interview at which you will be given an opportunity to respond to the reasons for the revocation.  If you are not released after the informal interview, you will receive notification of a new review, which will occur within approximately three months of the date of this notice.

(*Id.* at 1.)  ICE took Mhanna into custody, and he was transported to the Ramsey County Jail.  (Compl. ¶ 5, Docket No. 1.)

On January 8, 2010, Mhanna submitted various documents in response to the Request for Evidence.  (Mot. to Reopen & Reconsider Ex. 2, Engebretson Aff. Ex. E, Docket No. 4.)  Mhanna provided the requested medical records, evidence of his lawful parole into the United States, and a notice of approval relative to a Fourth Preference I-130 Petition filed by Mhanna's brother.  (*Id.* at 1.)  The cover letter also argues that Mhanna's "inadmissibility ground may be overcome (or does not exist) because any false claim to U.S. citizenship by Mr. Mhanna was timely retracted by his own volition."  (*Id.* at 2.)  The documents Mhanna submitted as evidence of his lawful parole included his I-213 Record of Deportable/Inadmissible Alien, the December 8, 1998 Record of Sworn Statement, and information from his credible-fear interview.

On January 14, 2010, Sharon V. Dooley, Field Office Director at the USCIS St. Paul Field Office, filed a notice of decision denying Mhanna's application to adjust status.  (Engebretson Aff. Ex. B, Docket No. 4.)  At the bottom of the notice is a notation stating, "Prepared By: RAH."  (*Id.* at 1.)  The decision states that Mhanna is excluded under INA § 212(a)(6)(C)(ii).  (*Id.* at 2.)  The decision also states that USCIS denied the Form I-601 application for waiver of inadmissibility.  (*Id.*)  It then states, "There is no appeal of this decision, but this denial is without prejudice to your ability to renew your application before an Immigration Judge."  (*Id.*)  The decision did not address Mhanna's timely retraction defense.  (Compl. ¶ 27, Docket No. 1.)

Also on January 14, 2010, Dooley filed a notice of decision denying Mhanna's application for waiver of grounds of inadmissibility.  (Engebretson Aff. Ex. B at 3, Docket No. 4.)  The decision found that Mhanna was not eligible for waiver because the

USCIS found that Mhanna "falsely represented [him]self to be a United States citizen to gain admission pursuant to INA section 212(a)(6)(C)(ii)." (*Id.* at 5.) The waiver "does not apply to inadmissibility under INA section 212(a)(6)(C)(ii). There are no forms of relief available for this ground of inadmissibility." (*Id.*) The notice of decision stated that Mhanna may appeal the decision denying the application for waiver, and that in order to do so Mhanna must file his notice of appeal within thirty days. (*Id.* at 3.)

On January 15, 2010, Mhanna's counsel contacted Dooley by email, indicating that they had not yet received the January 14 decisions, and requested an opportunity to discuss the case. (Engebretson Aff. Ex. E, Docket No. 4.) Mhanna's counsel raised the issue of timely retraction. Dooley replied by email, stating, "I recommend that your office file a Motion to Reopen or Reconsider once you receive the notice. . . . Upon receipt of the motion, we will do everything possible to resolve this matter expeditiously." (*Id.*)

On January 19, 2010, Mhanna filed a motion to Reopen/Reconsider his I-485 application for adjustment of status. (Engebretson Aff. Ex. E, Docket No. 4.) The cover letter noted that the January 14, 2010 decision denying the I-485 application "fails to acknowledge th[e] defense" of timely retraction. (*Id.* at 1.) The motion stated, in part, that "[t]he first attorney of record in these proceedings apparently missed the timely retraction argument, and this client should not be prejudiced by the acts of his previous and ineffective counsel." (*Id.* at 5.) Mhanna submitted excerpts from the transcript of the 2002 proceedings before the IJ, as well as the IJ's opinion. (Exs. 3-4, Engebretson Aff. Ex. E, Docket No. 4.)

On January 27, 2010, Dooley filed a notice of decision denying Mhanna's application to adjust status. (Engebretson Aff. Ex. A, Docket No. 4.) At the bottom of the notice is a notation stating, "Prepared By: RAH." (*Id.* at 1.) The decision cites relevant BIA case law and reviews the evidence in the record. The decision concludes:

> In a written brief received by the Service on January 13, 2010, your attorney asserts the claim that you timely retracted your claim to United States citizenship during primary inspection on December 8, 1998. A review of the testimony and documents on file indicate[s] that you retracted your claim to United States citizenship only after the primary inspector took you aside and began to ask you further questions regarding your country of origin. This retraction took place only after it became apparent that the disclosure of the falsity of the statements was imminent. As a result, your retraction was not timely and you are inadmissible to the United States pursuant to INA § 212(a)(6)(C)(ii). It is noted that you failed to raise the timely retraction claim during proceedings before the Immigration Judge or the subsequent appeals process.
>
> On November 13, 2009, you filed for a waiver of your inadmissibility on Form I-601. However, this agency denied the Form I-601. As a result, you are inadmissible to the United States pursuant to INA § 212(a)([6])(C)(ii) and your application to adjust status is hereby denied. There is no appeal of this decision, but this denial is without prejudice to your ability to renew your application before an Immigration Judge.

(Engebretson Aff. Ex. A at 3, Docket No. 4.)

### D. Procedural History

On February 1, 2010, the Mhannas filed a civil complaint against defendants in the United States District Court for the District of Minnesota. (Compl., Docket No. 1.) The complaint "challenges the U.S. Department of Homeland Security's decision to deny the Application for Adjustment of Status" for Mhanna. (*Id.* ¶ 1.) It alleges that "the Respondents have erred as a matter of fact and law by finding that Plaintiff Assaf Mhanna is barred from adjustment of status at this time pursuant to INA

§ 212(a)(6)(C)(ii) (false claim to U.S. Citizenship)." (*Id.* ¶ 4.) The complaint requests that this Court assume jurisdiction of the case, declare that defendants' actions are an arbitrary and capricious abuse of discretion, enter judgment declaring that defendants' finding that Mhanna is ineligible to adjust his status is unlawful and of no force and effect, find that defendant acted in an arbitrary and capricious manner, and compel defendants to act upon the application for adjustment of status in accordance with the appropriate and applicable laws and regulations. (Compl. at 11-12, Docket No. 1.)

Also on February 1, 2010, petitioners filed a Motion for Emergency Temporary Restraining Order and Request for Injunctive Relief. (Docket No. 2.) The motion requested that the Court "enter an emergency, temporary restraining order and preliminary injunction . . . enjoining Respondents from preventing Plaintiff Assaf Mhanna's release; releasing Plaintiff from physical custody pending the outcome of the instant action . . . ; and declaring that the actions and/or decisions of the Department of Homeland Security Citizenship and Immigration Services and Department of Homeland Security Immigration and Customs Enforcement were in violation of law." (*Id.* at 1-2.) On February 16, 2010, the Court issued an order denying the motion, holding that the Court did not have jurisdiction to enjoin Mhanna's removal. *Mhanna v. U.S. Dep't of Homeland Sec. Citizenship & Immigration Servs.*, Civ. No. 10-292, 2010 WL 584034, at *13 (D. Minn. Feb. 16, 2010).

On February 25, 2010, ICE removed Mhanna from the United States to his native Lebanon. (*See* Kuhn Decl. Ex. 1, Docket No. 22.) On March 19, 2010, United States Magistrate Judge Raymond L. Erickson issued an order to show cause why the Court

should not grant Mhanna's petition for writ of habeas corpus. (Order, Docket No. 12.) On April 20, 2010, defendants filed a response to the order to show cause, and filed a motion to dismiss Mhanna's habeas claim as moot and to dismiss Mhanna's remaining claims for failure to state a claim and lack of subject matter jurisdiction. (Mot. to Dismiss Compl., Docket No. 24.)

## DISCUSSION

## I. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction and requires the Court to examine whether it has authority to decide the claims. *Uland v. City of Winsted*, 570 F. Supp. 2d 1114, 1117 (D. Minn. 2008). Under Article III, § 2, of the Constitution, federal courts cannot exercise judicial power unless there is an actual case or controversy. *See, e.g.*, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). The "case-or-controversy requirement is satisfied only where a plaintiff has standing. To have Article III standing, a plaintiff must adequately establish: (1) an injury in fact (*i.e.*, a 'concrete and particularized' invasion of a 'legally protected interest'); (2) causation . . . ; and (3) redressability[.]" *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269 (2008) (citation omitted).

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to the non-moving party. *See, e.g.*, *Bhd. of Maint. of Way Employees v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001) (per curiam). To survive

a motion to dismiss, however, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  That is, to avoid dismissal, a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore, must be dismissed.  *Id.* (internal quotation marks omitted).

"When considering . . . a motion to dismiss under Fed. R. Civ. P. 12(b)(6) . . . , the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint[.]" *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (internal quotation marks omitted).

## II.    MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS

As alleged in his complaint, Mhanna seeks habeas relief under 28 U.S.C. § 2241 "as [Mhanna] is presently subject to immediate detention and custody under color of authority of the United States Government, and said custody is in violation of the Constitution, laws or treaties of the United States."  (Compl. ¶ 3, Docket No. 1.)  Mhanna claims that his "continued detention [pursuant to a final order of removal] causes direct

injury to his US citizen family members who rely on him for their emotional well-being, and financial support." (*Id.* ¶ 13.) Defendants argue that the Court should dismiss Mhanna's habeas petition as moot because Mhanna has been removed to his native Lebanon pursuant to a final order of removal and is no longer in the custody of ICE.

### A.     Case or Controversy Requirement

A district court has jurisdiction over a habeas petitioner who is no longer in custody if the petitioner can show that he was in custody at the time that he filed the petition and that his release from detention has not rendered the habeas petition moot – that is, the petitioner can still demonstrate a case or controversy under Article III, § 2 of the Constitution. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *see also Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) ("Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies."); *Zalawadia v. Ashcroft*, 371 F.3d 292, 297 (5th Cir. 2004) ("The Supreme Court has made it clear that the 'in custody' determination is made at the time the habeas petition is filed." (citing *Spencer*, 523 U.S. at 7)). The petitioner may show an Article III controversy after he is released from custody if he can demonstrate "some concrete and continuing injury other than the now-ended incarceration or parole – some 'collateral consequence' of the conviction." *Spencer*, 523 U.S. at 7.

Mhanna argues that his habeas petition is not moot. Mhanna argues that he continues to suffer collateral consequences because he is barred from re-entering the

United States based on the USCIS' finding of inadmissibility.[6]  (Pls. Reply to Def.'s Resp. to the Order to Show Cause, Pls.' Resp. to Def.'s Mot. to Dismiss the Pet. for Writ[] of Habeas Corpus as Moot, and Mot. to Dismiss Compl. (hereinafter "Pls.' Mem.") at 21-24, Docket No. 30.)  Mhanna notes that federal courts have previously held that "bars to readmission are legally cognizable collateral consequences that preserve a live controversy even after [a habeas petitioner's] removal."  (*Id.* at 22-23 (citing *Zegarra-Gomez v. Ashcroft*, 314 F.3d 1124, 1127 (9th Cir. 2003); *Leitao v. Reno*, 311 F.3d 453, 455 (1st Cir. 2002); *Smith v. Ashcroft*, 295 F.3d 425, 428 (4th Cir. 2002); *Chong v. District Director, I.N.S.*, 264 F.3d 378, 385 (3d Cir. 2001); *Max-George v. Reno*, 205 F.3d 194, 196 (5th Cir. 2000))); *see also Zalawadia*, 371 F.3d at 297.  Mhanna also argues that based on the manner of his removal from the United States, he remains in "constructive custody" of the United States.  (Pls.' Mem. at 24-25, 28.)  Mhanna contends that despite his removal from the United States, the Court may grant relief as "law and justice require."  (*Id.* at 25); *see* 28 U.S.C. § 2243 ("The court shall . . . dispose of the matter as law and justice require.").

---

[6] Mhanna asserts that he will be found inadmissible for the next ten years because he was found to be unlawfully present in the United States for more than one year and was subsequently removed.  *See* 8 U.S.C. § 1182(a)(9)(B)(i)(II) ("Any alien (other than an alien lawfully admitted for permanent residence) who . . . has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure or removal from the United States, is inadmissible.").  Mhanna also asserts that a finding of inadmissibility under 8 U.S.C. § 1182(a)(6)(C)(ii) permanently bars Mhanna's re-entry into the United States.  *See* 8 U.S.C. § 1182(a)(6)(C)(ii) ("Any alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit under this chapter (including section 1324a of this title) or any other Federal or State law is inadmissible.").  Mhanna argues that those bars to readmission "are legally cognizable consequences that preserve a live controversy even after his removal."  (Pls.' Mem. at 22, Docket No. 30.)

**B.     The Court Does not Have Jurisdiction over Mhanna's Habeas Petition**

Assuming that Mhanna can maintain his habeas claim by demonstrating that he continues to suffer collateral consequences, the Court does not have jurisdiction to remedy those collateral consequences. The Court acknowledges Mhanna's cited case law as supporting the general proposition that a statutory bar on readmission constitutes a collateral consequence maintaining a live case or controversy. The cases cited by Mhanna, however, were published prior to 2005, when Congress passed the REAL ID Act.

The REAL ID Act, Pub L. No. 109-13, § 106(c), 119 Stat. 231, 310-11 (2005), and 8 U.S.C. § 1252 provide that "[n]otwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order for removal entered or issued under any provision of this chapter." 8 U.S.C. § 1252(a)(5); *Lang v. Napolitano*, 596 F.3d 426, 428 (8th Cir. 2010). That is, "the REAL ID Act place[s] exclusive review of orders of removal with circuit courts." *Haider v. Gonzales*, 438 F.3d 902, 906 (8th Cir. 2006). "The jurisdictional provisions of 8 U.S.C. § 1252 apply to 'all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States,' so judicial review of claims arising from such actions is governed exclusively by that section." *Rafaelano v. Wilson*, 471 F.3d 1091, 1095 (9th Cir. 2006) (emphasis omitted) (quoting 8 U.S.C. § 1252(b)(9)). Thus, the REAL ID Act vests with circuit courts exclusive jurisdiction to review habeas corpus

challenges to final orders for removal or deportation.  *See Skurtu v. Mukasey*, 552 F.3d 651, 655-56 (8th Cir. 2008); *Fernandez v. Keisler*, 502 F.3d 337, 346 (4th Cir. 2007) (concluding that the REAL ID Act "expressly eliminated district courts' habeas jurisdiction over removal orders"); *Rafaelano*, 471 F.3d at 1095.

Mhanna's habeas claim challenges only the government's effort to remove him pursuant to a valid order of removal.  *See Mhanna*, 2010 WL 584034, at *9.  That is, Mhanna was in detention pursuant to a valid final order of removal and not pursuant to the USCIS' denial of the application for adjustment.  (*See* Order of Supervision, Engebretson Aff. Ex. F, Docket No. 4; *In re Mouhanna*, No. A77393085, Slip Op. at 29, Mot. to Reopen & Reconsider Ex. 4, Engebretson Aff. Ex. E, Docket No. 4.))  Although the USCIS presumably would have released Mhanna if the USCIS granted his application for adjustment, Mhanna was in custody pursuant to the IJ's final order of removal.  *Cf.* 28 U.S.C. § 2241(c)(3) ("The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody **in violation of the Constitution or laws or treaties of the United States**[.]" (emphasis added)).  In the Court's view, Mhanna's habeas claim therefore effectively challenges only Mhanna's detention pursuant to the final order for removal.  *Cf. Skurtu*, 552 F.3d at 656 ("Skurtu's 'Complaint' attacks the IJ's order of removal, therefore vesting this court with the 'sole and exclusive means for review.'"); *Haider*, 438 F.3d at 910 (holding that because the petitioner's habeas petition did "nothing more than attack the IJ's removal order, our Court shall be the sole and exclusive means for

judicial review." (internal quotation marks omitted)). Accordingly, the Court does not have subject matter jurisdiction to review Mhanna's habeas petition.[7]

The Court notes that the REAL ID Act does not completely strip district courts of jurisdiction to hear habeas petitions from individuals subject to removal orders. The Court may review habeas claims challenging the administrative detention of an individual who is subject to a removal order. *See Denis v. DHS/ICE of Buffalo, N.Y.*, 634 F. Supp. 2d 338, 340-41 (W.D.N.Y. 2009) ("As this [habeas] petition [is] based only on petitioner's allegedly unlawful detention in DHS/ICE custody, and not on the removal order from which the detention flowed, the issue is whether Denis suffers from any 'collateral consequences' of detention now that he has been deported and he is no longer 'in custody' of DHS/ICE."). To the extent that the Court could construe Mhanna's request for relief as a reviewable habeas claim relating to his ICE detention, however, ICE's removal of Mhanna from the United States renders any such claim moot. *See, e.g.*, *Castillo v. Holder*, No. 8:09CV324, 2010 WL 561030, at *1 (D. Neb. Feb 9, 2010) ("The [REAL ID] Act does not affect a district court's jurisdiction over habeas petitions challenging the detention associated with a removal order, but this aspect of Castillo's habeas case became moot when she was removed from the United States and released from detention." (citation omitted)); *Louismar v. Holder*, No. CA 09-0221, 2009 WL 2424445, at *2 (S.D. Ala. Aug. 6, 2009) ("Several district courts, in addition to this

---

[7] In addition, the Ninth Circuit has upheld the IJ's order of removal on review, and "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action . . . to . . . execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g); *Lang*, 596 F.3d at 428-29.

Court, have determined that once a § 2241 petitioner has been removed from the United States and deported to his native country his petition seeking release from detention and ICE custody becomes moot as there is no longer a live case or controversy as required under Art. 3, § 2, cl. 1." (internal quotation marks omitted)); *cf. Ali. v. Cangemi*, 419 F.3d 722, 724 (8th Cir. 2005) ("With Ali's December 29, 2004 release, Ali arguably received the relief he requested.").[8] Thus, to the extent that the Court could construe Mhanna's habeas claim as challenging his administrative detention, Mhanna's habeas claim is moot.[9]

In sum, this Court does not have jurisdiction to review Mhanna's challenge to the removal order as advanced in his habeas claim, and to the extent that Mhanna seeks habeas relief relating to his ICE detention, that claim is moot. Accordingly, the Court grants defendants' motion to dismiss Mhanna's habeas petition.

---

[8] Mhanna argues that he is in the "constructive custody" of the United States because the government did not provide Mhanna with proper documents – including a valid Lebanese passport – which led to a short detention by Egyptian Transit Police and "an investigation" by Lebanese immigration. (Pet'rs' Mem. at 25, Docket No. 30.) Mhanna argues that those incidents constitute restrictions on liberty under *Rumsfeld v. Padilla*, 542 U.S. 426, 437 (2007) ("[O]ur understanding of custody has broadened to include restraints short of physical confinement[.]"). Mhanna, however, has not identified any case law supporting a "constructive custody" theory and has not identified the type of relief the Court could provide Mhanna if he were successful on the merits of his habeas claim.

[9] The record also indicates that Mhanna's ICE detention did not exceed the ninety-day removal period for aliens who are ordered removed. *See* 8 U.S.C. § 1231(a)(1)(A) ("Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days[.]"). ICE took Mhanna into custody on December 29, 2009, and ICE released Mhanna from custody when he departed the United States on February 25, 2010. (*See* Engebretson Aff. Exs. F, G, Docket No. 4; Kuhn Decl. Ex. 1, Docket No. 26.)

## II.    MOTION TO DISMISS MHANNA'S REMAINING CLAIMS

### A.    Substantive Due Process Claim

Plaintiffs allege that the USCIS' denial of Mhanna's application for adjustment of status and finding that Mhanna is inadmissible violates a substantive due process right of Mhanna and his family to live together in the United States.  (*See* Compl. ¶ 43, Docket No. 1.)  Defendants argue that the Court should dismiss Mhanna's due process claims because Mhanna does not have a protected interest in receiving a discretionary benefit like adjustment to lawful permanent residence or in residing in the United States merely because his family members are United States citizens or lawful permanent residents. (Resp'ts' Resp. to the Order to Show Cause, Mot. to Dismiss the Pet. for Writ of Habeas Corpus as Moot, & Mot. to Dismiss Pet'rs' Compl. (hereinafter "Defs.' Mem.") at 12, Docket No. 25.)  The Court agrees.

The denial of discretionary relief – including the denial of an adjustment of status to lawful permanent resident – cannot violate a substantive interest protected by the Due Process clause. *Hanggi v. Holder*, 563 F.3d 378, 384 (8th Cir. 2009) (holding that there is "no constitutionally-protected liberty interest in the discretionary relief of adjustment of status."); *Munoz v. Ashcroft*, 339 F.3d 950, 954 (9th Cir. 2003); *see also Guled v. Mukasey*, 515 F.3d 872, 880 (8th Cir. 2008) ("Because adjustment of status amounts to a power to dispense mercy, an alien can have no constitutionally protected liberty interest in such speculative relief and cannot state a claim for a violation of due process rights. The failure to receive discretionary adjustment-of-status relief does not constitute the deprivation of a constitutionally-protected liberty interest." (internal quotation marks and

citations omitted)).  Moreover, plaintiffs can "point to no authority to suggest that the Constitution provides [Mhanna] with a fundamental right to reside in the United States simply because other members of [his] family are citizens or lawful permanent residents."  *De Mercado v. Mukasey*, 566 F.3d 810, 816 n.5 (9th Cir. 2009).  Accordingly, the Court grants defendants' motion to dismiss plaintiffs' substantive due process claim.

### B.      Jurisdiction to Review Mhanna's Remaining Claims[10]

The Court next turns to whether it has jurisdiction to review Mhanna's remaining claims.  On November 13, 2009, after the USCIS approved Tammy Mhanna's Immediate Relative Immigrant Visa Petition under INA § 201(b) and 8 U.S.C. § 1155(b), Mhanna filed a Form I-485 as an arriving alien applying to adjust his status to that of a lawful permanent resident.  Mhanna also filed a Form I-601 application for waiver of grounds of inadmissibility.   (Compl. ¶ 18, Docket No. 1); *see* 8 C.F.R. §§ 245.2(a)(1) and 1245.2(1)(ii) (providing that the USCIS has jurisdiction to adjudicate an arriving alien's adjustment of status); *Matter of Yauri*, 25 I & N. Dec. at 107 ("[T]he existence of a final order of removal does **not** preclude the USCIS from granting adjustment of status to an arriving alien who is otherwise eligible for adjustment of status.").  The USCIS denied Mhanna's Form I-485 application for adjustment of status, concluding that Mhanna was statutorily ineligible for adjustment because he was inadmissible for falsely representing himself as a United States citizen to immigration inspectors.  (Engebretson Aff. Ex. A,

---

[10] Although not alleged in the complaint, Mhanna contends that his removal by ICE to Lebanon "was unlawful as executed."  (Pls.' Mem. at 26-28, Docket No. 30.)  Mhanna, however, does not indicate that he seeks any relief for the allegedly unlawful removal.

Docket No. 4); *see* 8 U.S.C. § 1182(a)(6)(C)(ii). The USCIS further determined that Mhanna did not timely retract his misrepresentation[11] because he did not admit that he was not a United States citizen until "after the Service . . . challenged the veracity of the claim." (Engebretson Aff. Ex. A, Docket No. 4) The USCIS denied Mhanna's Form I-601 Application for Waiver of Grounds of Inadmissibility under INA § 212(i), 8 U.S.C. § 1182(i). (*Id.*)

Mhanna challenges two aspects of the USCIS' decision. First, Mhanna alleges that the USCIS erred by denying his I-485 application for adjustment of status. (*See, e.g.* Compl. ¶ 1, Docket No. 1 ("This action challenges the US Department of Homeland Security's decision to deny the Application for Adjustment of Status for the otherwise eligible applicant, Assaf Mhanna."); *id.* ¶ 14 (alleging that Mhanna "is eligible for adjustment of status . . . and he should have been, or should now be, afforded adjustment of status"); Pls.' Mem. at 7, Docket No. 30) Second and relatedly, Mhanna claims that he timely retracted his statement that he was a United States citizen and the USCIS erred by concluding that he was inadmissible under INA § 212(a)(6)(C)(ii), 8 U.S.C. § 1182(a)(6)(C)(ii), and statutorily ineligible for adjustment. (*See, e.g.*, Compl. ¶ 7, Docket No. 1 ("Defendants have erred as a matter of fact and law by finding that [Mhanna] is barred from adjustment of status at this time pursuant to INA §212(a)(6)(C)(ii) (false claim to US Citizenship)."); *id.* ¶ 13 ("The Defendants did not

---

[11] An alien's timely, voluntary retraction of a false statement may excuse the misrepresentation if it is not made in response to actual or imminent exposure of the false statement. *See, e.g.*, *Llanos-Senarillos v. United States*, 177 F.2d 164, 165 (9th Cir. 1949); *Matter of Namio*, 14 I. & N. Dec. 412, 414 (BIA 1973).

deny [Mhanna's] Application for Adjustment of Status as a matter of discretion. Instead, the Defendants determined [Mhanna] was inadmissible and thus not eligible for Adjustment of Status under INA § 212(a)(6)(C)(ii)."); *id.* ¶ 29; Pls.' Mem. at 2, Docket No. 30 ("The denial of [Mhanna's] Application for Adjustment of Status based on the [USCIS'] finding that he did not timely retract any misrepresentation or false claim to US Citizenship is unlawful and contrary to controlling law."); *see generally id.* at 11-16.) Mhanna argues that the propriety of the USCIS' inadmissibility determination remains a justiciable issue – even though he has been removed – because if "Mhanna were to seek an Immigrant Visa through consular processing, the [USCIS'] erroneous finding of inadmissibility under INA § 212(a)(6)(C)(ii) forever bars Mhanna from obtaining an immigrant visa." (Pls. Mem. at 18-19.)

Mhanna asks the Court to assume jurisdiction of his case; declare that the USCIS' "actions are an arbitrary and capricious abuse of discretion;" "[e]nter Judgment declaring that [the USCIS'] finding that [Mhanna] is ineligible to adjust his status . . . is unlawful, null and void, and of no force and effect;" find that the USCIS "failed to act in accordance with the law . . . and reached a decision unwarranted by the facts of this case;" "[c]ompel [the USCIS] . . . to perform [its] duty to act upon the Application for Adjustment of Status owed to the Plaintiffs;" and grant any other relief that the Court deems appropriate. (Compl. at 11-12, Docket No. 1.)

### 1.     Adjustment of Status

The Attorney General, "in his discretion and under such regulations as he may prescribe," may adjust the status of an eligible alien present in the United States if (1) the

alien has been "admitted or paroled into the United States;" (2) the alien has applied for adjustment of status to lawful permanent residence; (3) the alien is eligible to receive an immigrant visa and is admissible to the United States; and (4) an immigrant visa is immediately available to the alien at the time he filed his application.  INA § 245(a), 8 U.S.C. § 1255(a).  An alien is inadmissible if "by fraud or willfully misrepresenting a material fact, [the alien] seeks to procure . . . admission into the United States or [any] other benefit under [the INA]."  8 U.S.C. § 1182(a)(6)(C)(i).  An alien is also inadmissible if he or she "falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit."  *Id.* § 1182(a)(6)(C)(ii).

The Attorney General may waive the inadmissibility of an alien who is deemed inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(C)(i) because he or she entered the country based on fraud or misrepresentation of a material fact.  *See* 8 U.S.C. § 1182(a)(6)(C)(iii).  "The Attorney General may, in the discretion of the Attorney General, waive the application of clause (i) of subsection (a)(6)(C) . . . in the case of an immigrant who is the spouse, son or daughter of a United States citizen or of an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the refusal of admission . . . of such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such an alien[.]" 8 U.S.C. § 1182(i).  The INA does not permit the USCIS to grant a waiver to an alien who is deemed inadmissible under clause (ii) for falsely representing himself to be a United States citizen.

## 2. Jurisdiction

Mhanna contends that the Court has subject matter jurisdiction over his claims "pursuant to 28 USC § 1331 Federal Question Jurisdiction; 28 USC § 2201, the Declaratory Judgment Act; 5 USC § 702, the Administrative Procedures Act[;] 28 USC § 1361, regarding an action to compel an office of the United States to perform his duty; [and] 8 USC § 1329, of the Immigration and Nationality Act, as amended providing for jurisdiction of this Court over actions arising under said Act[.]" (Pls.' Mem. at 18, Docket No. 30.)

### a. This Court Does Not Have Jurisdiction to Review the USCIS' Denial of the I-485 Application for Adjustment of Status.

Mhanna argues that the Court "has jurisdiction to review the [USCIS'] finding of inadmissibility **and the [USCIS'] denial of [Mhanna's] application for adjustment of status**." (Pls.' Mem. at 19, Docket No. 30 (emphasis added).) Defendants argue that the Court does not have jurisdiction to order the USCIS to grant or deny an application for adjustment of status because the statute commits that discretionary decision to the Attorney General.

Mhanna filed his I-485 application for adjustment of status pursuant to 8 U.S.C. § 1255(a), which states:

> (a) Status as person admitted for permanent residence on application and eligibility for immigrant visa
>
> The status of an alien who was inspected and admitted or paroled into the United States . . . **may be adjusted by the Attorney General, in his discretion** and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment,

> (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a) (emphasis added); *see also* 8 C.F.R. § 245.2(a)(1) ("USCIS has jurisdiction to adjudicate an application for adjustment of status filed by any alien, unless the immigration judge has jurisdiction to adjudicate the application under 8 [C.F.R. §] 1245.2(a)(1)."). 8 U.S.C. § 1252(a)(2)(B) provides:

> **Notwithstanding any other provision of law** (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, . . . and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, **no court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General** or the Secretary of Homeland Security[.]

8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added); *Kucana v. Holder*, --- U.S. ---, 130 S. Ct. 827, 831 (2010) (holding that § 1252(a)(2)(B) precludes judicial review of determinations by the Attorney General that are made discretionary by statute, but not those that are made discretionary by regulation).

Because the USCIS' denial of an application for adjustment of status is discretionary, this Court does not have jurisdiction to review that decision. *See Lang*, 596 F.3d at 428 n.1 ("Congress has barred judicial review of the denial of adjustment of status, even if made in removal proceedings, except for review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals." (internal quotation marks omitted)); *Guled v. Mukasey*, 515 F.3d 872, 880 (8th Cir. 2008) (holding that the court did not have jurisdiction to review an Immigration

Judge's "discretionary determination" denying an application for cancellation of removal).  As this Court noted in its order denying plaintiffs' motion for a temporary restraining order, "Even if a court were to agree with the Mhannas that USCIS's determination that Mhanna is ineligible to receive adjustment of status is erroneous, Congress has nonetheless given the Attorney General discretion to determine whether to grant an application for adjustment of status."  *Mhanna*, 2010 WL 584034, at *12.  Accordingly, the Court grants defendants' motion to dismiss for lack of subject matter jurisdiction to the extent that Mhanna asks the Court to grant the application for adjustment or to review the USCIS' discretionary decision to deny the application for adjustment.[12]

Federal courts, however, may review non-discretionary, legal determinations, such as a conclusion that an alien is statutorily ineligible for adjustment because he is inadmissible under 8 U.S.C. § 1182(a)(6)(C)(ii).  *See Guled*, 515 F.3d at 880 ("We may review the non-discretionary determinations underlying [an agency's discretionary] decision, such as the predicate legal question whether the IJ properly applied the law to

_____

[12] Similarly, the Court does not have jurisdiction to review the USCIS' denial of the waiver of admissibility because the USCIS' determination that a waiver is appropriate is discretionary.  8 U.S.C. § 1252(a)(2)(B) (precluding courts from exercising jurisdiction over "any judgment regarding the granting of relief under [8 U.S.C. §] 1182(i) [for waiver of inadmissibility under clause (i) of subsection (a)(6)(C)"); *see Cospito v. Attorney General*, 539 F.3d 166, 170-71 (3d Cir. 2008); *Mendez-Moranchel v. Ashcroft*, 338 F.3d 176, 179 (3d Cir. 2008); *see also Vaso*, 2010 WL 746393, at *4 (holding that "the decision on a waiver of inadmissibility" is not subject to judicial review).  Moreover, even if it could review the USCIS decision to deny Mhanna's Form I-601, the USCIS was not statutorily authorized to grant a waiver of inadmissibility because the USCIS determined that Mhanna was ineligible pursuant to INA § 212(a)(6)(C)(ii), 8 U.S.C. § 1182(a)(6)(C)(ii).  *See* INA § 212(a)(6)(C)(iii), 8 U.S.C. § 1182(a)(6)(C)(iii) ("Waiver authorized – For provision authorizing waiver of clause (i), see subsection (i)."); 8 U.S.C. § 1182(i) ("The Attorney General may, in the discretion of the Attorney General, waive the application of clause (i) of subsection (a)(6)(C)[.]").

the facts in determining an individual's eligibility."). Thus, 8 U.S.C. § 1252(a)(2)(B) would not foreclose judicial review of the USCIS determination that Mhanna is statutorily inadmissible because he made a material misrepresentation about his citizenship. *See United States ex rel. Vaso v. Chertoff*, No. 09-1988, 2010 WL 746393, at *4 (3d Cir. Mar. 5, 2010) ("The determination that an alien is statutorily inadmissible is a nondiscretionary, legal determination, for which § 1252 does not foreclose review.") As discussed below, however, the Court concludes that it does not have jurisdiction to review the USCIS' nondiscretionary legal determination that Mhanna is statutorily ineligible for adjustment because he is inadmissible.

>    **b.** **The Court Does Not Have Jurisdiction to Review the USCIS' Determination that Mhanna Is Inadmissible and Therefore Statutorily Ineligible to Be Adjusted to Permanent Lawful Resident.**

Despite defendants' concession – without citing case law[13] – that this Court has jurisdiction to review nondiscretionary, legal determinations such as the finding of statutory ineligibility, the Court concludes that the INA does not affirmatively grant district courts' jurisdiction to review constitutional or legal questions of the kind presented here. The Court also concludes, in accordance with Eighth Circuit precedent

---

[13] Defendants apparently agree with plaintiffs that under the APA the "Court would have jurisdiction to review Mhanna's APA claim regarding denial of the adjustment of status application . . . [because] all possible administrative remedies have been exhausted, and USCIS did not deny adjustment of status in the exercise of discretion." (Defs.' Reply Mem. at 7, Docket No. 34; *see also* Defs.' Mem. at 13, Docket No. 25 ("Under the specific facts alleged here, Respondents acknowledge that this Court would have subject matter jurisdiction to review the denial of adjustment of status to Mhanna under federal question jurisdiction, as his cause of action would proceed under the [APA].").)

and recent appellate case law, that the INA **precludes** district courts' exercise of jurisdiction over such constitutional or legal questions.

### i. The Court Does Not Have Jurisdiction to Review Nondiscretionary Legal Determinations Under the INA.

Section 1252(a)(2)(D) provides that although courts do not have jurisdiction to review discretionary determinations under § 1252(a)(2)(B), "[n]othing in subparagraph (B) . . . which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed **with an appropriate court of appeals** in accordance with this section." 8 U.S.C. § 1252(a)(2)(D) (emphasis added). Federal courts in this district, the Eighth Circuit, and outside of the Eighth Circuit have construed that language to hold that appellate courts therefore have exclusive jurisdiction to review Constitutional issues or questions of law. *See Abdelwahab v. Frazier*, 578 F.3d 817, 821 (8th Cir. 2009) ("[Section] 1252(a)(2)(D) applies only to questions of law raised upon a petition for review filed with an appropriate court of appeals. Thus, it does not grant jurisdiction to review questions of law in district court cases." (internal quotation marks omitted)); *Bah v. Cangemi*, 489 F. Supp. 2d 905, 912-13 (D. Minn. 2007); *Lopez-Aldana v. Jarpmin*, No. 09-CV-2479, 2009 WL 3202426, at *2-3 (D. Minn. Sept. 30, 2009) ("Under 8 U.S.C. § 1252(a)(2)(D), Lopez-Aldana can seek review of constitutional claims or questions of law underlying the decision to deny [temporary protected status ("TPS")] even though the ultimate decision to deny TPS is discretionary. But such review is only available in the 'appropriate court of appeals[.]'" (quoting 8 U.S.C. § 1252(a)(2)(D))); *Ginters v. Cangemi*, 419 F. Supp. 2d

1124, 1131 (D. Minn. 2006) (stating that issues of law relating to the denial of an I-130 Petition for Alien Relative "must be reviewed by the Eighth Circuit Court of Appeals rather than the District Court"); *see also Hassan v. Chertoff*, 543 F.3d 564, 566 (9th Cir. 2008) (per curiam), *amended and superseded on rehearing en banc on other grounds*, 593 F.3d 785 (9th Cir. 2010); *Hamilton v. Gonzales*, 485 F.3d 564, 568 (10th Cir. 2007). *But see, e.g., Baez v. United States*, No. CV-09-662-HU, --- F. Supp. 2d ---, 2010 WL 2175995, at *12-16 (D. Or. May 28, 2010) (reviewing an underlying legal determination by the USCIS in the adjudication of an alien's application for adjustment of status); *Chen v. Napolitano*, 651 F. Supp. 2d 63, 70 (S.D.N.Y. 2009) (finding subject matter jurisdiction over a question of law underlying a decision by the Administrative Appeals Office).

> ### ii. The INA Precludes the Court's Exercise of Subject Matter Jurisdiction over the USCIS' Nondiscretionary Legal Determinations Under the APA or Any Other Statute.

Mhanna argues that the Court has jurisdiction under the APA to review certain agency determinations outlined in 8 U.S.C. § 1252. (Pls. Mem. at 7, Docket No. 30.) The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Under the APA, the Court has jurisdiction to review an agency decision if the agency action is final, the action adversely affects the party seeking review, and the agency's decision is non-discretionary. *See* 5 U.S.C. §§ 702, 704 ("Agency action made reviewable by statute and

final agency action for which there is not other adequate remedy in a court are subject to judicial review.").  The Court "shall decide all relevant questions of law," and "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706 (2)(A).

The APA "is not a jurisdiction-conferring statute." *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006).  "Rather, the jurisdictional source for an action under the APA is the 'federal question' statute[, 28 U.S.C. § 1331], which grants the district court 'original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States, and thereby confer[s] jurisdiction on federal courts to review agency action." *Lee v. U.S. Citizenship & Immigration Servs.*, 592 F.3d 612, 619 (4th Cir. 2010) (some internal quotation marks and citation omitted).  "The judicial review provisions of the APA, *see* 5 U.S.C. §§ 701-706, simply provide a limited cause of action for parties adversely affected by agency action." *Id.* (internal quotation marks omitted).

Mhanna contends that he was adversely affected by the USCIS' legal determination that he is statutorily ineligible for adjustment of status because he is inadmissible under 8 U.S.C. § 1182(a)(6)(C)(ii).  (Pls.' Mem. at 7-10, Docket No. 30.) Mhanna argues that "[n]otwithstanding the restrictions on judicial review of certain agency determinations set forth at 8 USC § 1252, APA jurisdiction is supported when the agency's action is final, the action adversely affects the party seeking review, and the agency's decision is non-discretionary," such as the USCIS' inadmissibility determination under 8 U.S.C. § 1182(a)(6)(C)(ii).  The Court disagrees.

The Supreme Court has "read the APA as embodying a basic presumption of judicial review," *see Lincoln v. Vigil*, 508 U.S. 182, 190 (1993) (internal quotation marks omitted), but the APA's provisions do not apply where "statutes preclude judicial review." 5 U.S.C. § 701(a)(1). Here, the Court must consider "whether the INA precludes review of [Mhanna's] claim under the APA." *See Lee*, 592 F.3d at 619.

As discussed above, the INA strips courts of jurisdiction to review discretionary agency decisions such as the denial of adjustment of status "[n]otwithstanding any other provision of law (statutory or nonstatutory), . . . except as provided in subparagraph (D) and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . [1255 of this title]." 8 U.S.C. § 1252(a)(2)(B). "[T]he language 'regardless of whether the judgment, decision, or action is made in removal proceedings' makes clear that the jurisdictional limitations imposed by § 1252(a)(2)(B) also apply to review of agency decisions made outside of the removal context." *Lee*, 592 F.3d at 619.

To the extent that Mhanna challenges only the USCIS' legal determination of statutory ineligibility, the INA precludes the Court from exercising jurisdiction over Mhanna's APA claims. Section 1252(a)(2)(D) carves out an exception to the jurisdiction-stripping language of § 1252(a)(B) whereby "courts of appeal [retain] a narrowly circumscribed jurisdiction to resolve constitutional claims or questions of law raised by aliens seeking discretionary relief." *Lee*, 592 F.3d at 620 (citing *Higuit v. Gonzales*, 433 F.3d 417, 419 (4th Cir. 2006)).

The Court agrees with the Fourth Circuit's holding in *Lee v. United States Citizenship & Immigration Services*, that despite raising an apparent question of law – that is, whether the USCIS properly applied the timely-retraction law to the facts of the case – "§ 1252(a)(2)(D) does not give [Mhanna] a jurisdictional bootstrap into district court. The express language of the statute requires [Mhanna] to raise any constitutional or legal questions upon a petition for review filed with an appropriate court of appeals." 592 F.3d at 620 (internal quotation marks omitted). In *Lee*, the plaintiff, an alien and Korean national, brought an action in federal district court against the defendant USCIS under the APA challenging the USCIS' denial of his application for adjustment of status on the basis that plaintiff was statutorily ineligible for adjustment. *Id.* The district court dismissed the case for lack of jurisdiction, and the plaintiff appealed. The Fourth Circuit, citing the Eighth Circuit case *Abdelwahab v. Frazier*, 578 F.3d 817, concluded "that the district court did not have jurisdiction to entertain [the plaintiff's] challenge to the [USCIS'] eligibility determination and subsequent denial of adjustment of status," and that § 1252(a)(2)(D) "specifically provides that the exclusive means of judicial review of a legal issue related to the denial of an adjustment of status is by a petition for review to the court of appeals." *Lee*, 592 F.3d at 621.

In light of the INA's application "[n]otwithstanding any other provision of law (statutory or nonstatutory), . . . except as provided in subparagraph (D)," 8 U.S.C. § 1252(a)(2)(B), and the APA's limited application where "statutes preclude judicial review," 5 U.S.C. § 701(a)(1), the Court concludes that the INA precludes this Court's exercise of subject matter jurisdiction over Mhanna's claims under 28 U.S.C. § 1331 and

the APA. *See generally Lee*, 592 F.3d at 618-621. Accordingly, the Court grants

defendants' motion to dismiss Mhanna's complaint.[14]

### iii. Mhanna's Other Asserted Grounds for Jurisdiction

Mhanna also contends that the Court has jurisdiction under 8 U.S.C. § 1329 and

the Declaratory Judgment Act, 28 U.S.C. § 2201 to review the USCIS' eligibility

determination. Although the Court concludes that the INA precludes the Court from

reviewing Mhanna's claims, the Court also notes that Mhanna's other jurisdiction

grounds do not affirmatively grant the Court subject matter jurisdiction in these

circumstances.

8 U.S.C. § 1329 provides: "The district courts of the United States shall have

jurisdiction of all causes, civil and criminal, **brought by the United States** that arise

under the provisions of this subchapter." 8 U.S.C. § 1329 (emphasis added). That

provision, however, refers only to civil and criminal cases brought by the United States

relating to a "suit or proceeding for a violation of any of the provisions" of the INA. *Id.*

---

[14] Even if the Court had jurisdiction to grant or deny an application for adjustment of status or remand to the USCIS with instructions to grant Mhanna's application, the USCIS would not be able to grant the application. Under 8 U.S.C. § 1255(a), aliens must be "inspected and admitted or paroled into the United States" to be eligible to apply for adjustment of status. *See also* 8 C.F.R. § 245.1(a) (limiting eligibility to apply for adjustment of status to aliens "physically present in the United States"). Mhanna has been removed from the United States and is now in Lebanon. Because Mhanna is not physically present in the United States, he is not statutorily eligible for adjustment of status. *Cf.* 8 C.F.R. §§ 245.2(a)(4), 1245.2(a)(4) (stating that the departure of an applicant "who is under exclusion, deportation, or removal proceedings shall be deemed an abandonment of the application constituting grounds for termination of the proceedings by reason of the departure"). As Mhanna notes, however, there are consequences of the USCIS' inadmissibility determination that extend to Mhanna's future ability to seek admission to the United States through an Immigrant Visa. (*See* Pls.' Mem. at 18-19, Docket No. 30.)

Section 1329 further states: "Nothing in this section shall be construed as providing jurisdiction for suits against the United States or its agencies or officers." *Id.* Accordingly, § 1329 does not affirmatively confer jurisdiction on this Court to review the USCIS' nondiscretionary, legal determinations of statutory eligibility. *See Sabhari v. Reno*, 197 F.3d 938, 941-42 (8th Cir. 1999) (agreeing with the district court that "§ 1329 no longer provides a basis for jurisdiction over actions . . . instituted against officers of the United States").

In addition, 28 U.S.C. § 2201, the Declaratory Judgment Act "enlarges the range of remedies available in federal courts but does not confer jurisdiction." *See Patel v. Chertoff*, No. 4:06CV01207, 2007 WL 1223553, at * 2 (E.D. Mo. Apr. 24, 2007) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)). Thus, the Declaratory Judgment Act does not provide independent, affirmative jurisdictional grounds on which to review Mhanna's claims.

In sum, the Court grants defendants' motion to dismiss Mhanna's habeas petition because the Court does not have jurisdiction to review a habeas petition challenging a final order of removal and because Mhanna's removal to Lebanon otherwise renders the habeas petition moot. The Court also grants defendants' motion to dismiss Mhanna's remaining claims. Mhanna has not pleaded a plausible claim to relief for substantive due process violations, and this Court does not have subject matter jurisdiction to review the USCIS' discretionary denial of the I-485 Application for Adjustment of Status or the underlying legal determinations of statutory ineligibility. Accordingly, the Court dismisses plaintiffs' action with prejudice.

The habeas jurisdiction of the district courts have been greatly restricted in recent years in regard to immigration matters, mostly as a result of the actions of the Congress. In this case, the Court has very carefully examined in detail every claim raised by the plaintiffs to determine whether jurisdiction exists in this Court. The Court is surely mindful of, and sympathetic to, the significant impact these proceedings have had on the plaintiffs' family. But after an exhaustive review, it is quite clear to the Court that it simply has no jurisdiction to provide any of the avenues of relief that are sought. Without jurisdiction, the Court cannot provide a remedy to Assaf and Tammy Mhanna in this case. For that reason, the case is dismissed.

## ORDER

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that defendants' Motion to Dismiss [Docket No. 24] is **GRANTED**. Plaintiffs Assaf Mhanna and Tammy Mhanna's complaint is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  December 13, 2010
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____
JOHN R. TUNHEIM
United States District Judge